O

# United States District Court
# Central District of California

| | |
|---|---|
| IN RE PETER EMANUEL KVASSAY, | Case № 2:13-cv-08380-ODW |
| Debtor. | |
| PETER EMANUEL KVASSAY, | Bankruptcy Case № 2:13-bk-40267-PC |
| Appellant, | Adversary Case № 2:13-ap-01852-PC |
| v. | |
| ROBERT KVASSAY; RUSSAKOW, | **ORDER AFFIRMING** |
| GREENE AND TAN, LLP, | **BANKRUPTCY COURT'S** |
| Appellees. | **DECISION DISMISSING** |
| | **ADVERSARY COMPLAINT** |
| | **WITHOUT LEAVE TO AMEND** |

## I.    INTRODUCTION

Three feuding brothers, a campaign of "threatening and harassing conduct," and a deteriorating multimillion-dollar Los Angeles chateau set the stage for this bankruptcy appeal—the latest in the Kvassay family's legal saga.  Peter Emanuel Kvassay, the debtor involved in the bankruptcy petition, lived in the famed "Chateau Emanuel" in Los Angeles following the death of the brothers' parents.  Peter[1] also

---

[1] Since Peter and Robert Kvassay both share the same last name, the Court respectfully refers to them by their first names where necessary to avoid confusion.

served as the initial trustee of their family trust, which included the residence.  But Robert wrested control of the trust due to Peter's alleged damage to the property and then sued Peter in Los Angeles County Superior Court's Probate Department to evict him from the property and offset his distributive share from the trust.

The Probate Court issued an order evicting Peter, which was stayed once a third party posted a $216,000 cash deposit in lieu of an appeal bond.  Once the eviction order was affirmed, Robert moved to cash in on the deposit.  The same day as the Probate Court was set to hold an evidentiary hearing, Peter filed for Chapter 7 bankruptcy—thus invoking an automatic litigation stay under 11 U.S.C. § 362(a).  Robert later obtained leave from the bankruptcy court to continue with his state-court actions so long as he joined the bankruptcy trustee in those cases and did not enforce any judgment without further bankruptcy-court order.

After losing in the Probate Court, Peter filed this adversary proceeding in the bankruptcy court against Robert and the law firm that represented him, Russakow, Greene and Tan, LLP ("RGT").  After making detailed oral findings, the bankruptcy court dismissed the complaint without leave to amend, finding that Peter failed to state a plausible claim for relief under § 362.  Peter then appealed to this Court.  Finding no errors of law, this Court now **AFFIRMS** the bankruptcy court's decision.

## II.   FACTUAL BACKGROUND

Robert is the current trustee of the Kvassay Family Trust Dated February 26, 1993 ("Trust").  (ER 2.)  Peter, Robert's brother, is a Los Angeles County resident and beneficiary under the Trust.  (*Id.*)

### 1.   Robert initiates two probate proceedings against Peter

In May 2010, Robert filed a petition in the Los Angeles County Superior Court's Probate Department ("Probate Court") in his capacity as trustee seeking to evict Peter from trust real property located at 1554 Hill Drive in Los Angeles, California; and offset Peter's "distributive share" in the Trust.  (*Id.* at 3, 188.)  Robert requested over $1.5 million against Peter, plus attorneys' fees and costs.  (*Id.* at 3.)

In August 2010, the Probate Court issued a minute order evicting Peter and his brother Richard (a nonparty) from the residence.  (*Id.* at 4.)  Peter and Richard filed an appeal, and a third party posted a $216,000 cash deposit with the Superior Court in lieu of an appeal bond.  (*Id.* at 4.)  This entitled Peter and Richard to remain in the residence.  (*Id.*)

In October 2010, Robert, represented by RGT, filed another action in Probate Court for accounting and settlement of account arising out of a $221,000.00 contractual claim.  (*Id.*)

### 2. Peter files for bankruptcy; Probate Court evidentiary hearing continues

After a California appellate court affirmed the eviction order, Robert moved in the Probate Court to release the $216,000 cash deposit.  (*Id.* at 4–5.)  The Probate Court scheduled an evidentiary hearing on the motion for September 5, 2012.  (*Id.* at 5.)  On September 5, 2012, Peter filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Central District of California.  (*Id.*)  Peter's counsel gave written and oral notice of the bankruptcy petition to the Probate Court and RGT at the start of the hearing.  (*Id.* at 5–6.)

The Probate Court continued with the hearing and took evidence on Peter's use and occupancy of the Trust real property.  (*Id.* at 6.)  At the end of the hearing, the Probate Court acknowledged the pending bankruptcy petition and deferred ruling on the bond motion until Robert could obtain relief from the stay.  (*Id.* at 6–7.)

### 3. Robert seeks relief from the automatic stay

On September 28, 2012, Robert moved before the bankruptcy court for relief from the automatic stay.  (*Id.* at 7.)  On November 1, 2012, the bankruptcy court granted the motion on the conditions that Robert join the bankruptcy trustee as a real party in interest in the state-court matters and not take any action to enforce any state-court judgment without further order of the court.  (*Id.* at 8.)  The bankruptcy court issued a written order on November 16, 2012, which terminated the automatic stay with respect to the state-court proceedings, annulled the stay retroactively to the

bankruptcy-petition filing, and allowed Robert to proceed in the state-court matters to final judgment, including appeals ("Relief Order").  (*Id.* at 224–25.)   The court specifically ordered that the stay was terminated "subject to conditions set forth below." (*Id.* at 224.)  Those conditions were that:

1. The movant is to join the bankruptcy trustee as the real party in interest in both the state court proceedings; and

2. The movant may not take any action to enforce any state court judgment without a further order of the court.

(*Id.* at 225.)

On December 4, 2012, Robert filed a Notice of a Motion for Joinder of the Bankruptcy Trustee for Peter Kvassay in the Probate Court ("Joinder Motion").  (*Id.* at 10.)   Robert subsequently filed a declaration from the bankruptcy trustee, Timothy Yoo, stating, "I have no intention of making a claim on the bond monies at issue herein, nor are there any pending proceedings in this matter which I foresee participating in, including the pending [probate] trial.  I do not object to the Superior Court continuing its proceeding in my absence."  (*Id.* at 11 (emphasis omitted).)

On December 12, 2012, the Probate Court held a status conference at which RGT represented to the court that the relief from the automatic stay was "immediate" despite the two conditions imposed by the bankruptcy court.  (*Id.* at 12 (emphasis omitted).)   The Probate Court stated, "[RGT] is here saying, 'we don't have any conditions that have to be met.  The stay has been lifted, and we can proceed,' and I'm going to accept [its] representation."  (*Id.* (emphasis omitted).)  The Probate Court subsequently "order[ed] the release of those funds [held on deposit with the Superior Court] and [issued] a judgment against those funds in the amount of $192,660 jointly and severally against Richard S. Kvassay and Peter E. Kvassay."  (*Id.* at 12–13, 137.)

### 4.    Stay terminates

On December 21, 2012, the bankruptcy court closed Peter's case without entry of discharge because he failed to file Official Form 23, Debtor's Certification of

Completion of Postpetition Instructional Course Concerning Personal Financial Management—thus terminating the automatic stay. (*Id.* at 13, 137.)

On January 4, 2013, the Probate Court granted the Joinder Motion. (*Id.*) Three days later, the bankruptcy court reopened Peter's petition so that he could file Form 23. (*Id.* at 137.) The bankruptcy court subsequently granted Peter a discharge. (*Id.* at 137–38.)

On January 24, 2013, the Probate Court issued its First Amended Order Re. Release of Bond, finding against Peter and Richard "for a total due, jointly and several [*sic*] from Peter and Richard to Robert, as trustee of the Kvassay family trust, of $192,660." (*Id.* at 15.) The court ordered the Superior Court Clerk to issue a check in that amount to Robert. (*Id.*)

### 5.   Peter files the adversary proceeding

On August 20, 2013, Peter filed this adversary proceeding against Robert and RGT alleging willful violation of the automatic stay under 11 U.S.C. § 362(k)(1). (*Id.* at 1–21.) On October 2, 2013, Appellees moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Peter had not adequately pleaded a claim for violation of the automatic stay. (*Id.* at 26–52.)

On October 24, 2013, the bankruptcy court held a hearing and granted the motion without leave to amend. (*Id.* at 108–09.) The bankruptcy court recounted a detailed event timeline surrounding the automatic stay and state-court proceedings. (*Id.* at 128–38.) The court's decision hinged on the fact that the trustee made an informed decision not to participate in the state-court proceedings because, in his business judgment, those actions would not result in any benefit to the estate. (*Id.* at 138–39.) The court noted that if a reviewing court were to find that strict compliance with the Relief Order was necessary—i.e., that the bankruptcy trustee had to be joined to the state-court proceedings prior to continuing with them—then the result might be different. (*Id.* at 139.)

/ / /

6.     *Peter appeals to this Court*

On November 12, 2013, Peter filed a Notice of Appeal and elected to proceed before this Court.  (ECF Nos. 2, 3.)  Both parties timely submitted briefing, and the Court subsequently took the appeal under submission.  The appeal is now before the Court for decision.

## III.   JURISDICTION

The Court has jurisdiction to hear this bankruptcy-court appeal under 28 U.S.C. § 158(a) and Federal Rule of Bankruptcy Procedure 8001(b).

## IV.   STANDARD OF REVIEW

In reviewing a bankruptcy court's decision, a district court reviews legal determinations de novo.  *In re Olshan*, 356 F.3d 1078, 1083 (9th Cir. 2004).  This means that the court reviews the legal issues involved "independently and without deference."  *In re JTS Corp.*, 617 F.3d 1102, 1109 (9th Cir. 2010).  But the district court must accept factual findings unless clearly erroneous, that is, the court must be "left with the definite and firm conviction that a mistake has been committed."  *Id.* at 1109 (internal quotation marks omitted).

When a bankruptcy court dismisses a complaint under Federal Rule of Civil Procedure 12(b)(6)—which Federal Rule of Bankruptcy Procedure 7012(b) incorporates into bankruptcy adversary proceedings—the district court reviews the decision de novo.  *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1188 (9th Cir. 2011).  To survive a dismissal motion, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  A court is generally limited to the

1   pleadings and must construe all "factual allegations set forth in the complaint . . . as

2   true and . . . in the light most favorable" to the plaintiff.  *Lee v. City of L.A.*, 250 F.3d

3   668, 688 (9th Cir. 2001).  But a court need not blindly accept conclusory allegations,

4   unwarranted deductions of fact, and unreasonable inferences.  *Sprewell v. Golden*

5   *State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

6                              **V.   DISCUSSION**

7          Peter contends that Robert and RGT willfully violated the automatic stay by not

8   joining the bankruptcy trustee as the real party in interest in the state-court

9   proceedings and not obtaining an order from the bankruptcy court prior to enforcing

10  any state-court judgment.  But the Court finds that Robert and RGT did all that they

11  could to comply with the Relief Order's dual conditions as the bankruptcy court

12  recognized.  The Court therefore affirms the bankruptcy court's dismissal order.

13  **A.   Failure to join bankruptcy trustee in state-court proceedings**

14         Peter argues that Robert and RGT violated 11 U.S.C. § 362(a)(1) and (6) by not

15  joining the bankruptcy trustee and continuing with the state-court proceedings.  Those

16  subsections provide that the filing of a bankruptcy petition generally

17         operates as a stay, applicable to all entities, of—

18         (1)  the commencement or continuation, including the issuance or

19         employment of process, of a judicial, administrative, or other action or

20         proceeding against the debtor that was or could have been commenced

21         before the commencement of the case under this title, or to recover a

22         claim against the debtor that arose before the commencement of the case

23         under this title; [and] . . .

24         (6) any act to collect, assess, or recover a claim against the debtor that

25         arose before the commencement of the case under this title . . . .

26  11 U.S.C. § 362(a)(1), (6).  Any individual who willfully violates the stay is liable for

27  actual damages, including costs and attorneys' fees, as well as punitive damages "in

28  appropriate circumstances."  § 362(k)(1).  According to the Ninth Circuit, a "willful

violation is satisfied if a party knew of the automatic stay, and its actions in violation of the stay were intentional." *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1215 (9th Cir. 2002).

While Peter spends substantial space arguing that Robert and RGT had notice of the bankruptcy-petition filing, no one has ever disputed that fact. Peter gave oral and written notice to the Probate Court and parties before the September 5, 2012 evidentiary hearing that he had filed for Chapter 7 bankruptcy. Robert and RGT admitted in subsequent filings that they received notice. The bankruptcy court seemed to acknowledge as much, since it did not have to make any specific findings regarding Robert and RGT's knowledge of the petition. The Court therefore presumes that Appellees were aware of the bankruptcy petition at all dates relevant to the automatic stay—thus satisfying § 362(k)(1)'s knowledge element.

Peter argues that Robert and RGT failed to comply with the Relief Order because they did not join the bankruptcy trustee as a real party in interest in the state-court proceedings until January 2013. But Appellees contend that Peter cannot possibly state a claim under § 362, because the bankruptcy court annulled the stay retroactive to the petition filing date. They point out that the Relief Order specifically permitted Robert to proceed to judgment, including appeals, in the state-court matters. They also assert that the Relief Order did not include any time period by which Robert and RGT had to add the trustee as a party, and all parties recognize that the Probate Court eventually added Yoo to the state-court proceedings in January 2013.

While the Bankruptcy Code provides for a broad-sweeping automatic stay, § 362(a), Congress has also empowered bankruptcy judges to "grant relief from the stay provided under subsection (a) . . . , such as by terminating, annulling, modifying, or conditioning such stay . . . for cause," § 362(d)(1). When a reviewing court considers whether a party complied with the stay exemption, the "terms of an order modifying the automatic stay [are] strictly construed." *Casperone v. Landmark Oil &* / / /

1   *Gas Corp.*, 819 F.2d 112, 114 (5th Cir. 1987); *accord In re Wardrobe*, 559 F.3d 932,

2   935 (9th Cir. 2009); *In re Rader*, 488 B.R. 406, 413 (B.A.P. 9th Cir. 2013).

3            One possible construction of the Relief Order would suggest that Robert and

4   RGT had to join the bankruptcy trustee to the state-court proceedings in order to

5   qualify for automatic-stay relief.  The Relief Order states that the bankruptcy court

6   terminated the stay "subject to conditions set forth below."  The first condition

7   provided that the "movant is to join the bankruptcy trustee as the real party in interest

8   in both state court proceedings."  (ER 225.)  The Probate Court did not grant Robert's

9   Joinder Motion until January 4, 2013—after the automatic stay terminated due to the

10  bankruptcy court closing Peter's case.  It would thus seem that Appellees failed to

11  meet this prerequisite for benefiting from the Relief Order.

12           But several factors counsel the Court to apply a different construction to the

13  order.  Robert did in fact move to add the bankruptcy trustee as a necessary party to

14  the state-court proceedings on December 4, 2012—well before any actions that could

15  have potentially violated the automatic stay.  He also filed a declaration from Yoo, the

16  trustee, stating that the trustee did not object to being joined but that he had no interest

17  in pursuing the state-court matters on behalf of the estate.  As the bankruptcy court

18  recognized in dismissing Peter's complaint, a logical construction of the joinder

19  condition suggests that the bankruptcy court wanted the trustee to be fully informed

20  about the pending state-court litigation so that he could fully and effectively perform

21  his trustee duties and preserve estate assets.  The best way for him to receive that

22  information and to make educated decisions in the estate's interests was to become a

23  party to the probate proceedings.  But since he made an informed decision in his

24  business judgment to not pursue the $216,000 cash deposit, the purpose of the joinder

25  condition was readily fulfilled regardless of how the Probate Court handled the

26  Joinder Motion.

27           It would also make little sense to think that the bankruptcy court would make it

28  a condition that Robert and RGT become absolute guarantors of the Joinder Motion's

success.  It was certainly within the Probate Court's discretion to deny the motion after considering all relevant factors and evidence.  One would be hard-pressed to think that the bankruptcy court hinged its Relief Order on guaranteed success before the Probate Court.  Rather, the logical conclusion is that the bankruptcy court wanted Robert and RGT to do everything in their power to file the Joinder Motion and permit the trustee and the Probate Court to make educated decisions on that Motion's success.

Moreover, while the Probate Court issued a minute order on December 12, 2012, awarding Robert $192,660 against Peter and Richard jointly and severally, it appears that the court did not order the Superior Court Clerk to release the funds to Robert until January 24, 2013—well after the Probate Court had granted the Joinder Motion.  Yoo was therefore a party to the state-court proceedings at the time the Clerk disbursed the funds to Robert.

The Court consequently agrees with the bankruptcy court that Appellees did everything necessary to comply with the Relief Order's joinder condition.  The fact that the Probate Court did not grant the Joinder Motion until after it had issued a minute order in favor of Robert for $192,660 did not preclude Robert and RGT from benefiting from the Relief Order—thus crippling Peter's § 362 claim.

**B.      Enforcement of judgment against Peter**

Peter also argues that Robert and RST violated the automatic stay by not complying with the Relief Order's second condition: that they needed an additional bankruptcy-court order before proceeding with any judgment enforcement stemming from the state-court proceedings.

The main problem with Peter's argument is that no one actually enforced any state-court judgment against him during the pendency of the automatic stay.  It is therefore irrelevant that they never obtained a bankruptcy-court order prior to enforcing any judgment.  While the Probate Court issued a minute order on December 12, 2012, in favor of Robert for $192,660, the court did not order the

Superior Court Clerk to disburse the funds until January 24, 2013—well after the stay expired.

Moreover, no one actually enforced that judgment. Enforcement entails some affirmative action by Robert or RGT such as obtaining a writ of execution. But neither party invoked the Probate Court's enforcement powers. Rather, the Probate Court issued the minute order and later bond-release order of its own volition. The bankruptcy court specifically ordered that "*movant* may not take any action to enforce any state court judgment without a further order of the court." (ER 225 (emphasis added).) The Probate Court was not the "movant"—Robert was. Since Robert took "action to enforce any state court judgment," he could not possibly have violated the second Relief Order condition.

Neither did the subsequent reopening of Peter's bankruptcy petition reinstate the automatic stay. It is well settled that the automatic stay terminates at "the time the case is closed." 11 U.S.C. § 362(c)(2)(A). As the Ninth Circuit's Bankruptcy Appellate Panel has held,

> Reopening the case does not undo any of the statutory consequences of closing. . . . Likewise, to the extent that the automatic stay expired in conjunction with closing, it does not automatically spring back into effect. If protection is warranted after a case is reopened, then an injunction would need to be imposed.

*In re Menk*, 241 B.R. 896, 913–14 (B.A.P. 9th Cir. 1999). So once the bankruptcy court initially closed Peter's case on December 21, 2014—because of Peter's own failure to file a required form—the automatic stay terminated for good. The case's subsequent procedural history is therefore legally irrelevant to the stay issue.

The Court accordingly finds that the bankruptcy court did not err in dismissing Peter's complaint. Since his arguments fail as a matter of his own admissions and documents subject to judicial notice, he could not have possibly cured the deficiencies. The court thus properly denied leave to amend. *Miller v. Rykoff-Sexton,*

1  *Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) ("A motion for leave to amend may be denied

2  if it appears to be futile or legally insufficient.").

3  **C.    Improper procedure for bringing claim under § 362(k)(1)**

4        In their Responsive Brief, Appellees argue that the Court should also affirm the

5  bankruptcy court's decision because Peter improperly brought his § 362 claim as an

6  adversary proceeding under Federal Rule of Bankruptcy Procedure 7001 instead of a

7  motion as provided in Rule 9014.   But while Robert raised this issue before the

8  bankruptcy court, the court never expressly ruled on the argument.  (*See* ER 117 ("The

9  fact that the relief was sought by a complaint rather than a motion is neither here nor

10  there, as far as the Court is concerned.").)   Further, the Court has already found that

11  the bankruptcy court properly dismissed Peter's complaint.   The issue of whether

12  Peter invoked the proper procedure is thus moot and not properly decided for the first

13  time on appeal.

14                          **VI.    CONCLUSION**

15        For the reasons discussed above, the Court **AFFIRMS** the bankruptcy court's

16  decision.  A judgment will issue.

17        **IT IS SO ORDERED.**

18

19        July 31, 2014

20

21  _____

22                    **OTIS D. WRIGHT, II**
                **UNITED STATES DISTRICT JUDGE**

23

24

25

26

27

28